**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| SAMUEL STEELE and BARBRA SHERROD, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>700CREDIT, LLC,<br><br>DEFENDANT. | CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL ENCLOSED |

## INTRODUCTION

1. This case arises from a data breach. Defendant 700Credit, LLC, (hereafter "700Credit") is a credit reporting and compliance company that, as part of its normal business operations collects highly sensitive data that its clients maintain regarding third parties, including social security numbers, and other details. More specifically, among other clients, 700Credit maintained data on behalf of various car dealerships.

2. In a story that has become all too familiar, an unauthorized third-party gained access to 700Credit's network on or about on October 25, 2025, and absconded with personally identifying information (hereafter, "PII"). Criminals can now sell the victims' data on the black market for the purpose of stealing their identities. None of this would have occurred if 700Credit had implemented reasonable data security measures.

3. Plaintiffs Samuel Steele and Barbra Sherrod were victims of the data breach. They bring this action on behalf of themselves and all others similarly situated, seeking damages

for the injuries that Defendant's negligence have and will cause, as well as injunctive relief to ensure that the data Defendant continues to store will be protected by reasonable data security practices going forward.

## PARTIES

4. Plaintiff Samuel Steele is a resident of Cleveland Heights, Ohio, where he intends to remain.

5. Plaintiff Barbra Sherrod is a resident of Winterville, North Carolina, where she intends to remain.

6. Defendant 700Credit, LLC is a Delaware corporation with its principal place of business at 26555 Northwestern Highway, Suite 301, Southfield, Michigan 48033.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant 700Credit because it has its principal place of business located in Southfield, Michigan, within this District, and because it transacts substantial business in this District.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because at least one member of the proposed class is a citizen of a state different from Defendant, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, the proposed class consists of more than 100 members, and none of the exceptions under the statute apply.

9. Venue is proper in this District, and in this Division, because 700Credit's principal place of business is located in Oakland County, Michigan. See 28 U.S.C. § 1391(b)(1)–(2); E.D. Mich. LCivR 83.10(a), (b)(4) & (6).

## FACTUAL ALLEGATIONS

**A. 700Credit allowed Plaintiff's data to be accessed in a cybersecurity incident.**

10. According to the data breach notice that Plaintiffs received, an unauthorized third party gained access to 700Credit's computer systems beginning on or about October 25, 2025. A true and correct copy of the Notice Letter is attached as Exhibits 1 and 2.

11. Based on the disclosures in the Notice, information pertaining to Plaintiffs and Class members was part of the data accessed by an unauthorized external party in the Data Breach.

12. The specific information that was potentially compromised includes: name, address, date of birth, and social security number. Exhibits 1 and 2, at 1.

13. Because the incident targeted personally identifying information, it is reasonable to infer that bad actors may use victims' data for fraudulent purposes, including identity theft, financial fraud, and other misuse of personal information.

14. 700Credit has stated that, following the incident, it "promptly commenced an investigation with the assistance of third-party computer forensics specialists to confirm the nature and scope of the incident." Exhibits 1 and 2 at 1. This says nothing about what happened, nor provides any confidence that 700Credit has upgraded the clearly insufficient systems that allowed the information to be stolen in the first place.

15. While asserting in the Notice that it had no evidence of misuse, 700Credit simultaneously advised Plaintiffs and Class members to monitor accounts, review explanations of benefits, and enroll in identity theft protection services. These contradictory statements underscore that 700Credit recognized the risk of misuse was real and ongoing.

16. 700Credit's offer of only twelve months of identity theft protection is inadequate. Stolen PII retains value on the black market for years, meaning the risk of identity theft and fraud extends well beyond the limited monitoring period provided.

**B. The data breach was highly foreseeable, yet Defendant failed to take reasonable precautions.**

17. Given the type of data that 700Credit collected and stored, it was highly foreseeable that bad actors would attempt to access it without permission.

18. "[H]ackers are likely to be drawn to databases containing information which has a high value on secondary black markets," such as "identifying and financial data." Mark Verstraete & Tal Zarsky, *Optimizing Breach Notification*, 2021 U. ILL. L. REV. 803, 854–55 (2021). Consequently, "relevant and rational firms should engage in greater security investment and reduced collection—all steps to limit the prospects of a potential breach and subsequent notification." *Id.* at 855.

19. Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

20. Because Defendant collected and stored identifying and financial information that is very valuable to criminals, it was highly foreseeable that a bad actor would attempt to access that data without permission.

21. On information and belief, Defendant frequently collects and stores personally identifying on behalf of its clients. This information is provided to 700Credit's clients as part of the business relationship between the client and the source of the PII. This is part of the service

that 700Credit provides to its clients. Therefore, the burden (if any) of implementing reasonable data security practices is minimal in comparison to the substantial and highly foreseeable risk of harm.

22. On information and belief, Defendant failed to adequately train their employees on even the basic cybersecurity protocols, including:

a. Effective password management and encryption protocols, including, but not limited to, the use of multi-factor authentication for all users;

b. Locking, encrypting and limiting access to computers and files containing sensitive information;

c. Implementing guidelines for maintaining and communicating sensitive data;

d. Protecting sensitive patient information, including medical records and insurance information, by implementing protocols on how to request and respond to requests for the transfer of such information and how to securely send such information through a secure file transfer system to only known recipients; and

e. Providing focused cybersecurity awareness training programs for employees.

23. The FTC has noted the need to factor data security into all business decision-making. *Start With Security, A Guide for Business*, FTC (accessed September 10, 2025), https://bit.ly/3mHCGYz. According to the FTC, data security requires: (1) encrypting information stored on computer networks; (2) retaining payment card information only as long as necessary; (3) properly disposing of personal information that is no longer needed; (4) limiting

administrative access to business systems; (5) using industry-tested and accepted methods for securing data; (6) monitoring activity on networks to uncover unapproved activity; (7) verifying that privacy and security features function properly; (8) testing for common vulnerabilities; and (9) updating and patching third-party software.

24. To that end, the FTC has issued orders against businesses that failed to employ reasonable measures to secure sensitive data. *See In the matter of Lookout Services, Inc.*, No. C-4326, ¶ 7 (June 15, 2011) ("[Defendant] allowed users to bypass authentication procedures" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks, such as employing an intrusion detection system and monitoring system logs."); *In the matter of DSW, Inc.*, No. C-4157, ¶ 7 (Mar. 7, 2006) ("[Defendant] failed to employ sufficient measures to detect unauthorized access."); *In the matter of The TJX Cos., Inc.*, No. C-4227 (Jul. 29, 2008) ("[R]espondent stored . . . personal information obtained to verify checks and process unreceipted returns in clear text on its in-store and corporate networks[,]" "did not require network administrators . . . to use different passwords to access different programs, computers, and networks[,]" and "failed to employ sufficient measures to detect and prevent unauthorized access to computer networks . . ."); *In the matter of Dave & Buster's Inc.*, No. C-4291 (May 20, 2010) ("[Defendant] failed to monitor and filter outbound traffic from its networks to identify and block export of sensitive personal information without authorization" and "failed to use readily available security measures to limit access between instore networks . . ."). These orders, which all preceded the data breach, further clarify the measures businesses must take to meet their data security obligations.

25. On information and belief, Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures

and an up-to-date technology security strategy, demonstrates a willful and conscious disregard for privacy, and has exposed the PII of Plaintiffs and thousands of members of the proposed Classes to unscrupulous operators, con artists, and outright criminals.

26. On information and belief, Defendant violated its obligation to implement best practices and comply with industry standards concerning computer system security, which allowed class members' data to be accessed and stolen by criminals.

### C. Steele's information was exposed in the data breach, which caused him to suffer concrete injuries.

27. Plaintiff Samuel Steele has, from time to time, inquired with car dealers regarding financing a vehicle.

28. More specifically, in and around 2021, Plaintiff Steele contacted Cleveland Car Connection of Cleveland, Ohio about purchasing a vehicle. As part of this interaction, in order to determine his eligibility for financing, Plaintiff Steele provided his PII, including his Social Security Number, to Car Connection.

29. In addition, in September 2025, Plaintiff Steele contacted several dealerships in the Cleveland metropolitan area regarding a possible purchase of a vehicle. As part of these visits, in order to determine his eligibility for financing, Plaintiff Steele provided his PII, including his Social Security Number, to those dealerships.

30. On or about December 22. 2025, Plaintiff Steele received a Notice from Defendant 700Credit informing him that his personally identifiable information was accessed in the breach. See Exhibit 1.

31. Based on the Notice, one or more of the dealerships Plaintiff Steele visited in either 2021 or in 2025 provided Plaintiff Steele's PII to 700Credit as part of 700Credit's provision of credit investigation services on behalf of dealerships.

32. Plaintiff Steele's PII was compromised in the data breach and was very likely stolen and in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

33. Defendant continues to maintain Plaintiff Steele's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Steele had no relationship with 700Credit and was never informed that any entity had provided 700Credit access to his PII.

34. Plaintiff Steele typically takes measures to protect his information and is very careful about sharing his personal data. Plaintiff Steele has never knowingly transmitted unencrypted personally identifiable information over the internet or through an unsecured source.

35. As a result of the data breach, Plaintiff Steele has suffered a loss of time and has spent and continues to spend considerable time addressing issues related to the breach. Plaintiff Steele has spent significant time monitoring his financial accounts, as advised in the Notice, and enrolling in credit monitoring services. Plaintiff Steele has also sustained emotional distress in addition to lost time.

36. Plaintiff Steele also suffered actual injury in the form of damages to and diminution in the value of his personally identifiable and protected health information—a form of intangible property that he entrusted to 700Credit—which was compromised as a result of the breach.

37. Plaintiff Steele also suffered loss of autonomy over his PHI and PII. The Data Breach deprived him of the ability to control who accessed his sensitive medical and insurance information.

38. Plaintiff Steele has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security number, being placed in the hands of criminals.

39. As a result of the Data Breach, Plaintiff Steele anticipates spending considerable time and money on an ongoing basis to mitigate and address harms caused by the exposure of his data. Plaintiff Steele is already at present risk and will remain at increased risk of identity theft and fraud for years to come, requiring ongoing monitoring of his financial accounts.

### D. Sherrod's information was exposed in the data breach, which caused her to suffer concrete injuries.

40. On or about October 2025, Plaintiff Sherrod contacted a number of car dealerships regarding the possibility of financing a vehicle. More specifically, Plaintiff Sherrod inquired with Deacon Jones Ford of Kinston (North Carolina) about purchasing a vehicle.

41. As part of this interaction, in order to determine her eligibility for financing, Plaintiff Sherrod provided her PII, including his Social Security Number, to Deacon Jones Ford.

42. On or about December 22. 2025, Plaintiff Sherrod received a Notice from Defendant 700Credit informing her that her personally identifiable information was accessed in the breach. See Exhibit 2.

43. Based on the Notice, Deacon Jones Ford or another similar dealership provided Plaintiff Sherrod's PII to 700Credit as part of 700Credit's provision of credit investigation services on behalf of dealerships.

44. Plaintiff Sherrod's PII was compromised in the data breach and was very likely stolen and in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

45. Defendant continues to maintain Plaintiff Sherrod's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Sherrod had no relationship with 700Credit and was never informed that any entity had provided 700Credit access to her PII.

46. Plaintiff Sherrod typically takes measures to protect her information and is very careful about sharing her personal data. Plaintiff Sherrod has never knowingly transmitted unencrypted personally identifiable information over the internet or through an unsecured source.

47. As a result of the data breach, Plaintiff Sherrod has suffered a loss of time and has spent and continues to spend considerable time addressing issues related to the breach. Plaintiff Sherrod has spent significant time monitoring her financial accounts, as advised in the Notice, and enrolling in credit monitoring services. Plaintiff Sherrod has also sustained emotional distress in addition to lost time.

48. Plaintiff Sherrod also suffered actual injury in the form of damages to and diminution in the value of her personally identifiable and protected health information—a form of intangible property that she entrusted to 700Credit—which was compromised as a result of the breach.

49. Plaintiff Sherrod also suffered loss of autonomy over her PHI and PII. The Data Breach deprived her of the ability to control who accessed her sensitive medical and insurance information.

50. Plaintiff Sherrod has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security number, being placed in the hands of criminals.

51. As a result of the Data Breach, Plaintiff Sherrod anticipates spending considerable time and money on an ongoing basis to mitigate and address harms caused by the exposure of her data. Plaintiff Sherrod is already at present risk and will remain at increased risk of identity theft and fraud for years to come, requiring ongoing monitoring of his financial accounts.

### E. All Class Members Have Suffered Harm as a Result of the Breach.

52. Because personally identifying and financial information has been accessed by criminals, Plaintiffs and the Class have suffered concrete and ongoing injuries.

53. Plaintiffs and the Class are at an imminent and substantial risk of identity theft.

54. According to experts, one out of four data breach notification recipients become a victim of identity fraud. Study Shows One in Four Who Receive Data Breach Letter Become Fraud Victims, THREATPOST.COM (Feb. 21, 2013), https://bit.ly/3zB8Uwv.

55. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PHI can be worth up to $1,000.00 depending on the type of information obtained. See Brian Stack, *Here's How Much Your Personal Information is Selling for on the Dark Web*, EXPERIAN (Dec. 15, 2017), https://bit.ly/2Ox2SGY.

56. The value of Plaintiffs and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

57. It can take victims years to spot identity or PII theft, giving criminals plenty of time to milk that information for cash.

58. One such example of criminals using PII for profit is the development of "Fullz" packages. "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record or more on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz", which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records For Sale in Underground Stolen From Texas Life Insurance Firm*, KREBS ON SECURITY (Sep. 18, 2014), https://bit.ly/3Qj2eJd.

59. Cyber-criminals can cross-reference two sources of PII to marry unregulated or partial data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete "Fullz" dossiers on individuals.

60. The development of "Fullz" packages means that stolen PHI from the data breach can easily be used to link and identify it to Plaintiffs' and the proposed Classes' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PHI stolen by the cyber-criminals in the data breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is likely what is already happening to Plaintiffs and members of the proposed Classes, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Classes' stolen PII is being misused, and that such misuse is fairly traceable to the data breach

61. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.

62. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

63. In addition to out-of-pocket expenses that can exceed thousands of dollars for the victim of new account identity theft, and the emotional toll identity theft can take, some victims have to spend a considerable time repairing the damage caused by theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

64. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiffs and the Class will need to be remain vigilant against unauthorized data use for years or even decades to come.

65. Moreover, the breach has diminished the value of Plaintiffs and the Class's personal information.

66. The FTC has recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency." *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable*, FTC (Dec. 7, 2009), https://bit.ly/3xKfzmu.

67. Since it was included in the breach, Plaintiffs and the Class's information has already been accessed by criminals, which decreases its value in the marketplace.

68. Therefore, the value of Plaintiffs and the Class's personal information was reduced by the data breach.

69. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

70. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or

practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

71. Defendant's failure to adopt reasonable and appropriate safeguards constitutes an unfair practice under Section 5 of the FTC Act.

72. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

73. None of those injuries would have occurred if Defendant had implemented reasonable data security practices.

## CLASS ACTION ALLEGATIONS

74. Pursuant to FED. R. CIV. P. 23(b)(2) and (b)(3), Plaintiffs seek certification of a Class defined as follows:

> All residents of the United States whose personal information was stored or maintained by 700Credit, LLC and which was compromised in connection with the data breach beginning on or around October 25, 2025.

75. Excluded from the Class are: (a) Defendant and its officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

76. *Ascertainability*. The Class can be readily identified through 700Credit's records, which is demonstrated by the fact that many class members have already been identified and sent notice letters regarding the data breach.

77. *Numerosity*. Based on publicly-available reports, as many as 5.8 million individuals were affected by the 700Crecdit data breach. Therefore, the Class is so numerous that individual joinder is impracticable.

78. *Typicality*. Plaintiffs' claims are typical of the Class they seek to represent. Like all class members, Plaintiffs' personal information was exposed in the data breach as a result of Defendant's failure to implement reasonable data security measures. Thus, Plaintiffs' claims arise out of the same conduct and are based on the same legal theories as those of the absent class members.

79. *Adequacy of Class Representative*. Plaintiffs will fairly and adequately protect the interests of the Classes. They are aware of their fiduciary duties to absent class members and are determined to faithfully discharge their responsibility. Plaintiffs' interests are aligned with (and not antagonistic to) the interests of the Class.

80. *Adequacy of Counsel*. In addition, Plaintiffs have retained competent counsel with considerable experience in class action and other complex litigation, including data breach cases. Plaintiffs' counsel have done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

81. *Commonality and Predominance.* This case presents numerous questions of law and fact with answers common to the Classes that predominate over questions affecting only individual class members. Those common questions include:

a. Whether Defendant had a duty to use reasonable care to safeguard Plaintiffs and the Class's PII;

b. Whether Defendant breached the duty to use reasonable care to safeguard the Class's PII;

c. Whether Defendant breached its contractual promises to safeguard Plaintiffs and the Class's PII;

d. Whether Defendant knew or should have known about the inadequacies of its data security policies and system and the dangers associated with storing sensitive PII;

e. Whether Defendant failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiffs and the Class's PII from unauthorized release and disclosure;

f. Whether the proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems to safeguard and protect Plaintiffs and the Class's PII from unauthorized release and disclosure;

g. Whether the data breach was caused by Defendant's inadequate cybersecurity measures, policies, procedures, and protocols;

h. Whether Defendant is liable for negligence, gross negligence, or recklessness;

i. Whether Defendant's conduct, practices, statements, and representations about the data breach of the PII violated applicable state laws;

j. Whether Plaintiffs and the Class were injured as a proximate cause or result of the data breach;

k. What the proper measure of damages is; and

l. Whether Plaintiffs and the Class are entitled to restitutionary, injunctive, declaratory, or other relief.

82. *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual class member is likely relatively small,

which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

83. *Injunctive or Declaratory Relief.* In addition, Defendant acted or failed to act on grounds that apply generally to the Class, such that final injunctive or declaratory relief as to any one class member is appropriate as to all class members.

## CAUSES OF ACTION

### Count 1: Negligence

84. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-83.

85. Plaintiffs bring this count on their own behalf and on behalf of the Class.

86. Plaintiffs and the Class entrusted their PII to institutions who turned that information over to Defendant. Knowing this, Defendant owed to Plaintiffs and the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the data breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

87. Defendant owed a duty of care to Plaintiffs and the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the data breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs and the Class's PII failing to properly

supervise both the manner in which the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

88. Defendant owed these duties to Plaintiffs and the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs and the Class's personal and financial information in the conduct of its business, and Defendant retained that information.

89. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII.

90. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and the Class and the importance of exercising reasonable care in handling it.

91. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiffs and the Class and Subclass, which actually and proximately caused the data breach and Plaintiffs and the Class and Subclass's injury.

92. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and the Class's actual, tangible, injury-in-fact and damages, including, without limitation, theft of their PII by criminals, improper disclosure of their PII, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the data breach.

**Count 2: Negligence *Per Se***

93. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1-83.

94. Plaintiffs bring this count on their own behalf and on behalf of the Class.

95. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs and members of the Class's PII.

96. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs and the members of the Class and Subclass's sensitive PII.

97. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect its customers' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to its customers in the event of a breach, which ultimately came to pass.

98. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

99. Defendant had a duty to Plaintiffs and the members of the Class and Subclass to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs and the Class's PII.

100. Defendant breached its duties to Plaintiffs and members of the Class and Subclass under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs and members of the Class and Subclass's PII.

101. Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se.*

102. As a direct and proximate result, Plaintiffs suffered actual losses and damages, including, without limitation, theft of her PII by criminals, improper disclosure of her PII, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the data breach that resulted from and were caused by Defendant's negligence.

**PRAYER FOR RELIEF**

103. Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a. Certification of the proposed Class;
b. Appointment of the undersigned counsel as class counsel;
c. An award of all damages, including attorneys' fees and reimbursement of litigation expenses, recoverable under applicable law;
d. Restitution or disgorgement of all ill-gotten gains; and
e. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

104. Plaintiff demands a jury trial on all applicable claims:

Dated: January 23, 2026

By */s/ Daniel J. Noble*

**ABOOD LAW FIRM**
Daniel J. Noble (P86217)
Andrew P. Abood (P43366)
Jeffrey L. Abood (P72607)
*Co-Counsel for Plaintiffs Samuel Steele and Barbara Sherrod and the Class*
246 E. Saginaw Street, Suite 100
East Lansing, Michigan 48823
P: (517) 332-5900
E: daniel@aboodlaw.com
E: jeff@aboodlaw.com
E: discovery@aboodlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
4200 Regent Street, Suite 200
Columbus, OH 43219
Tel: (614) 578-5582
Email: mboyle@bgandg.com

Peretz Bronstein (*pro hac vice* to be filed)
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel: (212) 697-6484
Fax: (212) 697-7296
Email: peretz@bgandg.com

*Counsel Plaintiffs Samuel Steele and Barbara Sherrod and for the Class*